# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRACY R. HOPKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-4-NJR |
| | ) |
| IDOC, | ) |
| C/O WINKA, | ) |
| C/O JENNINGS, | ) |
| C/O JOHN DOE #2, | ) |
| C/O JOHN DOE #3, | ) |
| SERGEANT HANSON, | ) |
| MR. PINK, | ) |
| LISA KITTLE, | ) |
| C/O JOHN DOE #4, | ) |
| KENNETH C. FRENCH, | ) |
| JOSHUA B. SIMMS, | ) |
| JASON GINDER, | ) |
| ELDON L. COOPER, and | ) |
| MR. T. KITTLE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Tracy R. Hopkins, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Sheridan Correctional Center ("Sheridan"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Plaintiff alleges that, while at Lawrence Correctional Center ("Lawrence"), he was subjected to a harassing strip search and that Defendants retaliated against him when he filed grievances and reported the harassment. He asserts claims against the defendants under the Eighth, First, and Fourteenth Amendments.

1

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Plaintiff makes the following allegations: While working in the dining hall on January 31, 2017, Plaintiff and six other inmates presented to the guards for searches at the end of their shift. (Doc. 1, p. 4). Major Jennings was supervising the search, and John Doe #2 stood with him and watched the search of each inmate. The other six inmates were directed to pull down their pants, exposing their shorts, and pull up their shirts for the officers to run their fingers around their waistbands in search of contraband. (*Id*. at p. 5). When Plaintiff presented to C/O Winka for the search, Winka instructed Plaintiff to not only pull down his pants, but also to pull down his shorts, exposing Plaintiff's genitals and buttocks. (*Id*. at p. 6). Plaintiff was in full view of approximately thirty-five individuals, including inmates, food supervisors, and other officers. In response, several individuals laughed, pointed, joked, gawked, and verbally abused Plaintiff. (*Id*. at p. 7). No other inmate was required to remove his underwear except Plaintiff. (*Id*. at p. 5). Winka declared that no contraband was found and that Plaintiff could pull his pants back up. (*Id*.). Once Plaintiff pulled up his pants, Winka again directed him to pull down his pants and shorts, again exposing his genitals and buttock. Plaintiff alleges that there was no penological justification for the search, because the food supervisor had already indicated that all items in the kitchen were accounted for and no contraband was found. Plaintiff also alleges that Winka's actions were

2

unwarranted and constituted sexual harassment. Although both Jennings and John Doe #2 were feet away, they did nothing to stop the strip search. (*Id*. at pp. 5, 7). Plaintiff spoke with Jennings afterwards, and Jennings informed Plaintiff that Winka was only supposed to direct Plaintiff to pull down his pants. Jennings stated that he would monitor the strip searches closer. (*Id*. at pp. 7-8).

After Plaintiff returned to his cell, he called the Prison Rape Elimination Act ("PREA") report line. (Doc. 1, p. 8). The next day, February 1, 2017, Plaintiff was called to the internal affairs office for an investigation of the report. (Doc. 1-2 p. 6). Plaintiff alleges that he was "interrogated" by John Doe #3 and asked if his actions were part of a "get rich quick scheme". (Doc. 1, p. 8). John Doe #3 informed Plaintiff that he would never receive any settlement agreement for a violation of his constitutional rights. (*Id*.). Plaintiff alleges that John Doe #3's actions were in retaliation for reporting Winka's actions.

Plaintiff then filed a grievance about the strip search on February 5, 2017, and he attached six affidavits from inmates working in the dining hall with him on the date of the incident. (Doc. 1, p. 10). While working in the dining hall sometime prior to February19, 2017, another inmate informed Plaintiff that Sergeant Hanson told another inmate worker that he was going to "f*ck with everyone who wrote a[n] affidavit on Hopkins['s] behalf". (*Id*. at p. 11). Plaintiff spoke with Mr. Pink, a mental health professional, on February 19, 2017. (*Id*.). He informed Pink about the strip search and the harassment that he experienced since the search, including hand gestures and humping motions from other officers. (*Id*.). He also informed Mr. Pink about Hanson's threat. Mr. Pink spoke with his supervisor and confirmed to Plaintiff that Hanson had made a threat but that he would never admit to it. (*Id*. at p. 11-12). Mr. Pink informed Plaintiff that he would put all of Plaintiff's allegations, as well as the supervisor's statements about Hanson, in a report. (*Id*. at p.

12). He also recommended that Plaintiff continue to keep a paper trail of the actions taken against him.

After a weekend break from his work in the dining hall, Plaintiff returned to work on February 27, 2017. (Doc. 1, p. 13). He was informed by the dining hall supervisor, Lisa Kittle, that he was being removed from his position on the steam line and would, instead, be serving water, a downgrade in positions that also paid $10 less a month. (*Id*. at pp. 13-14). When Plaintiff questioned Kittle about the change in position, she fired him and sent him back to the housing unit. (*Id*.). The next day, February 28, 2017, he received a disciplinary ticket written by Mrs. Kittle for disobeying a direct order.

On February 29, 2017, Plaintiff received another disciplinary ticket from John Doe #4 while waiting to be strip searched in the dining hall. (Doc. 1, p. 15). John Doe #4 informed him that he was getting a ticket for theft, but he never received a copy of the ticket. And he ultimately did not have a hearing on the ticket because it was deemed a "time frame violation". (*Id*.). Plaintiff tried to obtain copies of both tickets from Mr. Kittle, his counselor and husband of food supervisor Mrs. Kittle, but Mr. Kittle failed to respond to the request slips he submitted on April 28 and May 12, 2017. (*Id*. at p. 16; Doc. 1-2, p. 13). Plaintiff believes that Mr. Kittle failed to respond in retaliation for Plaintiff writing grievances against Mrs. Kittle. Plaintiff later spoke to Mr. Kittle in person and asked for a copy of the ticket. Mr. Kittle stated that he did not know where to get copies of the tickets, and he did not know to whom Plaintiff should write to obtain a copy. (*Id.* at p. 17). Plaintiff also wrote the records office seeking copies but was informed that requests for access to an inmate's IDOC file were limited to mittimus paper, calculations of time served, and a few other items that could be requested from the business office, records office, health care unit, and/or by writing a letter to the chief administrative officer. (*Id*. at pp. 15-16).

Plaintiff received a third disciplinary report on March 7, 2017, this time for disobeying a direct order from Kenneth C. French. (Doc. 1, p. 17). French gave Plaintiff three direct orders to shut his cell door, and Plaintiff refused. (*Id*.). French gave Plaintiff a fourth order to shut his door, and Plaintiff then shut his door. (*Id*. at pp. 17-18). Plaintiff alleges that he did not disobey French because he closed the door after the fourth command. (*Id*. at p. 18). On March 13, 2017, Plaintiff had a disciplinary hearing for the ticket he received from Mrs. Kittle on February 27, 2017, which constituted a time frame violation. (Doc. 1, p. 18). As a result, the ticket should have been dismissed, but Joshua B. Simms, the chairperson of the adjustment committee, improperly backdated the hearing date to March 8 so that there was no time frame violation. (*Id*.; Doc. 1-2, p. 38). Plaintiff received 1-month commissary restriction for the disciplinary report. (*Id*.). Plaintiff had another hearing on the disciplinary report from French on March 14, 2017. (*Id*.). Jason E. Ginder and Eldon L. Cooper, adjustment committee members, found him guilty and gave "progressive discipline" due to the fact that it was his second disciplinary report for disobeying a direct order in a month, the first being the disciplinary report issued by Mrs. Kittle. (*Id*. at pp. 18-19, Doc. 1-2, pp. 38, 49-50). Plaintiff alleges that because Ginder and Cooper used the ticket issued by Mrs. Kittle in issuing discipline, the discipline was issued in retaliation for his grievance writing and his report to the PREA report line. Plaintiff received 1-month C-grade and one month in segregation (Doc. 1-2, p. 38).

## Preliminary Dismissals

The Court finds that Plaintiff fails to state a claim against Mr. Pink. The only allegations against Mr. Pink are that he met with Plaintiff on February 19, 2017, for mental health care, he informed Mr. Pink of the harassment, and Mr. Pink documented Plaintiff's complaints. (Doc. 1, pp. 9-13). There are no allegations suggesting any retaliation on Mr. Pink's part or any

participation in the harassing strip search. In fact, Plaintiff acknowledged that Mr. Pink helped him by documenting the threats by Sergeant Hanson and by suggesting to Plaintiff that he keep a paper trail of the harassment. (*Id*. at p. 12). As there are no allegations setting forth a constitutional violation by Mr. Pink, the Court **DISMISSES without prejudice** Mr. Pink for failure to state a claim upon which relief may be granted.

Plaintiff also alleges that John Doe #4 issued him a disciplinary ticket on February 29, 2017, for theft. (Doc. 1, p. 15). Unfortunately, however, he fails to allege a constitutional violation associated with this disciplinary ticket. He merely states that he never received a copy and never had a hearing on the ticket. It was ultimately dismissed as a "time frame violation". As there are no alleged constitutional violations associated with this ticket, the Court also **DISMISSES without prejudice** John Doe #4 for failure to state a claim.

Further, IDOC is not a proper defendant for Plaintiff's claim for of damages. IDOC is a state agency, and "[s]tate agencies are not 'persons' for purposes of the Civil Rights Act." *Toledo, Peoria & Wester R. Co. v. State of Ill. Dep't of Transp.*, 744 F.2d 1296, 1298 (7th Cir. 1984). Thus, IDOC is **DISMISSED with prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following eight counts:

> **Count 1:** Eighth Amendment claim against C/O Winka for conducting a harassing strip search.
>
> **Count 2:** Eighth Amendment claim against C/O Jennings and John Doe #2 for failing to intervene in the strip search.
>
> **Count 3:** First Amendment retaliation claim against John Doe #3 for interrogating Plaintiff in response to Plaintiff calling the PREA report line.

| | |
|---|---|
| **Count 4:** | First Amendment retaliation claim against Sergeant Hanson for making threats to other inmates in response to Plaintiff filing a grievance regarding the strip search. |
| **Count 5:** | First Amendment retaliation claim against Lisa Kittle for removing him from his position in the dining hall, then firing him and issuing a disciplinary ticket in response to Plaintiff's grievance. |
| **Count 6:** | Fourteenth Amendment due process violation against Lisa Kittle and Joshua Simms for backdating his disciplinary hearing. |
| **Count 7:** | First Amendment retaliation claim against Mr. T. Kittle for failing to respond to Plaintiff's inmate requests in retaliation for filing grievances against C/O Winka and Lisa Kittle. |
| **Count 8:** | First Amendment retaliation claim against Kenneth C. French, Jason E. Ginder, and Eldon L. Cooper for issuing and finding Plaintiff guilty of disobeying a direct order in response to Plaintiff filing grievances. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

## Count 1

Strip searches that are not related to legitimate security needs or are conducted in a harassing manner in order to humiliate and inflict psychological pain, may be found unconstitutional under the Eighth Amendment. Further, even if a valid penological reason existed for the search, "the manner in which the searches were conducted must itself pass constitutional muster." *Mays v. Springborn,* 719 F.3d 631, 634, (7th Cir. 2013) (group of inmates were strip

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

searched together, gratuitously exposing prisoners' nude bodies to each other, while guards uttered demeaning comments); *Mays v. Springborn,* 575 F.3d 643, 649–50 (7th Cir. 2009); *Calhoun v. DeTella,* 319 F.3d 936, 939-40 (7th Cir. 2003) (a strip search conducted in a harassing manner intended to humiliate and inflict psychological pain could violate the Eighth Amendment). Given the authority above, the manner in which Plaintiff alleges the strip search was conducted by C/O Winka should proceed for further review.

**Count 2**

Plaintiff also states a claim for failure to intervene against C/O Jennings and John Doe #2 for failing to stop the harassing strip search. *Miller v. Smith,* 220 F.3d 491, 495 (7th Cir. 2000); *Abdullahi v. City of Madison,* 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin,* 37 F.3d 282, 284 (7th Cir. 1994)).

**Count 3**

In order to state a claim for retaliation under the First Amendment, a plaintiff must demonstrate that (1) he engaged in constitutionally protected speech, (2) he suffered a deprivation likely to deter protected speech; and (3) his protected speech was a motivating factor in the defendants' actions. *Antoine v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would deter a person of "ordinary firmness" from engaging in First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *See McKinley v. Schoenbeck*, 731 F. App'x 511, 515 (7th Cir. 2018) (quoting *Surita v. Hyde*, 665 F.3d 860, 878-79 (7th Cir. 2011) ); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events

from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Plaintiff has not adequately alleged facts demonstrating that the actions taken by John Doe #3 were the type that would deter an individual of ordinary firmness from engaging in First Amendment activity. Plaintiff only alleges that John Doe #3 interrogated Plaintiff about his call to the PREA report line and asked him whether money was a motive for his report. Plaintiff's allegations of probing questions during an investigation of a PREA report, however, do not lead to an inference that the conduct would deter a person of ordinary firmness from exercising First Amendment activity in the future. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In fact, Plaintiff was not deterred because he filed a grievance regarding the strip search four days later. Thus, the Court finds that Plaintiff has failed to state a claim of retaliation as to John Doe #3. Count 3 is **DISMISSED without prejudice**.

## Count 4

Plaintiff also fails to state a claim against Sergeant Hanson for retaliation. Plaintiff alleges that Hanson told another inmate that he was going to mess with the inmates that submitted affidavits to Plaintiff. Hanson did not voice these threats to Plaintiff, and there are no allegations that he acted on these threats. In order to maintain a claim for retaliation, an inmate must have experienced a retaliatory *action* such as would deter him from engaging in the protected activity that prompted the retaliation. *See Bridges* 557 F.3d at 551–52; *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002). A mere verbal threat, that was not even directed to or at Plaintiff, does not constitute retaliatory action. *See DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir. 2000) (mere threats

9

without something more is not actionable). As such, Count 4 shall be **DISMISSED without prejudice**.

### Count 5

Plaintiff does, however, state a claim for retaliation against Lisa Kittle. Plaintiff alleges that he was fired from his position in the dining hall and issued a disciplinary ticket shortly after he filed his grievances. "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman*, 226 F.3d at 573 (citation omitted). Because Plaintiff's punishment did not include loss of good time credit, it is also not barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). Thus, Count 5 will proceed against Lisa Kittle.

### Count 6

Plaintiff fails to state a Fourteenth Amendment due process claim regarding his disciplinary ticket for disobeying a direct order. Plaintiff alleges that the disciplinary hearing was improperly backdated so that the disciplinary report would not be thrown out as being untimely. Even if the improper backdating amounted to a due process violation, Plaintiff's temporary loss of commissary privileges does not give rise to a protected liberty or property interest under the Fourteenth Amendment. *See Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status or loss of commissary privileges). Thus, Count 6 is **DISMISSED with prejudice**.

### Count 7

Plaintiff also has failed to state a claim of retaliation against Mr. T. Kittle. Plaintiff alleges that in response to his request for disciplinary documents, Mr. Kittle informed Plaintiff that he did not know how Plaintiff could access his disciplinary documents. Plaintiff later learned that he

could obtain information from his master file by contacting the business office, record office, health care unit, or the chief administrative officer. (Doc. 1, p. 16). The failure to provide Plaintiff with information on how to obtain his disciplinary documents would not deter a person of ordinary firmness from filing grievances in the future. Plaintiff likewise has not presented enough factual content to tie Kittle's actions to Plaintiff's First Amendment activity. Instead, Plaintiff merely alleges in conclusory fashion that Kittle's denial was in retaliation, which is not enough to state a claim. Count 7 is **DISMISSED without prejudice** for failure to state a claim.

### Count 8

Plaintiff also fails to state a claim of retaliation against Kenneth C. French, Jason E. Ginder, and Eldon L. Cooper. The disciplinary ticket for disobeying a direct order, related to his failure to close his cell door, was written over a month after he wrote his grievance about the strip search. Plaintiff fails to allege anything other than mere conclusory statements that these defendants' actions were done in retaliation. He does not allege that these individuals were aware of Plaintiff's grievances or his complaint to the PREA report line when the disciplinary ticket was issued or when he was found guilty of the charge. He only alleges that Ginder and Cooper were aware of his prior discipline for failing to obey a direct order. He has not alleged that his First Amendment activity was a "motivating factor" in Defendants' decisions. As such, the Court finds that Plaintiff has failed to include sufficient "factual content to nudge his claim ... across the line from conceivable to plausible." *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011) (internal quotation marks omitted). Count 8 is **DISMISSED without prejudice**.

### John Doe Defendants

The Court will add the Warden of Lawrence Correctional Center to the case, in his official capacity only, for purposes of identifying John Doe #2. *See Rodriguez v. Plymouth Ambulance*

*Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Once the name of John Doe #2 is discovered, Plaintiff must file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Motion for Counsel

In his Motion for Counsel (Doc. 3), Plaintiff claims that he needs counsel because he is not a lawyer. He indicates that he has sent letters to five lawyers and has not received any response. Given the early stage of the litigation, however, it is difficult to accurately evaluate the need for assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] Therefore, Plaintiff's Motion for Counsel (Doc. 3) is **DENIED** without prejudice. Plaintiff may renew his request for the recruitment of counsel at a later date.

### Disposition

For the reasons set forth above, Count 1 will proceed against C/O Winka, Count 2 will proceed against C/O Jennings and John Doe #2, and Count 5 will proceed against Lisa Kittle.

Further, Count 3 against John Doe #3, Count 4 against Sergeant Hanson, Count 7 against T. Kittle and Count 8 against Kenneth C. French, Jason E. Ginder, and Eldon Cooper are **DISMISSED without prejudice** for failure to state a claim. John Doe #4 and Mr. Pink are also **DISMISSED without prejudice** for failure to state a claim. The Clerk is **DIRECTED** to terminate these individuals from the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

Additionally, Count 6 against Lisa Kittle and Joshua Simms is **DISMISSED with prejudice**. IDOC is also **DISMISSED with prejudice**. The Clerk is **DIRECTED** to terminate Joshua Simms and IDOC from CM/ECF.

The Clerk is further **DIRECTED** to add the Warden of Lawrence Correctional Center, in his official capacity only, to the docket for the purposes of identifying John Doe #2.

The Clerk of Court shall prepare for Defendants C/O Winka, C/O Jennings, John Doe #2, Lisa Kittle, and the Warden of Lawrence Correctional Center: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure. As the Court is directing service, Plaintiff's motion for service of process (Doc. 4) is **DENIED as moot**.

If a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that defendant's current work address, or, if not known, his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). As the

Warden of Lawrence Correctional Center is in the case solely for discovery purposes, he need not respond to the Complaint. The Warden only needs to enter his appearance. He will receive further instruction on discovery at a later date.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 3/15/2019**

**NANCY J. ROSENSTENGEL**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**